

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

—————————————————————X

Alan Amron, echangingbarcode, LLC,
Plaintiffs,
v.

Case No. 24-CV-2930 (PAE)

**NOTICE OF MOTION TO INTERVENE FRCP §24(a)(b)**

ORAL ARGUMENT REQUESTED

MLB, MLB ADVANCED MEDIA (MLBAM),
Live Nation Entertainment (LNE), StubHub,
and 30 national baseball teams and event stadiums

(*LNE and STUBHUB noticed as
Voluntarily terminated by the Plaintiff*)
and Does I-X, Defendants.

—————————————————————X

   **PLEASE TAKE NOTICE** that on September 23, 2025 in the Chambers of Hon. Paul A. Engelmayer at 40 Foley Square Room 2201, an annex of the main US District Court Southern District of New York courthouse located at 500 Pearl Street, NY 10007, proposed interventor

1

LIVE-Fi® TECHNOLOGY HOLDINGS, by its California counsel Amy Weissbrod Gurvey previously granted *pro hac vice* status by this Court[1], will move to intervene in this lawsuit pursuant to FRCP 24(a)(b) to protect its interests. *Bridgeport v Delmonte*, 602 F. 3d 469 at 473 (2d Cir. 2010).

LIVE-Fi®, proposed intervenor, is the priority patent holder of standard essential US apparatus and method patents and registered copyrights that enable "*non-ticketing businesses*" at defendant Live Nation and Ticketmaster's owned, serviced and operated event venues [2]. US Patent Nos. 11403566, D647910S, 7603321. TXu001265644. Non-ticketing businesses" is a term defined in the 2010 DC District Court consent decree and competitive impact statement and Amended Judgment entered January 2020 and defendants MLB and MLB Advanced Media (MLBAM) are venture partners or licensees of defendants Live Nation and Ticketmaster who are contumaciously defying these mandates since 2010 and also infringing LIVE-Fi® patents.

The first LIVE-Fi® ticketing management patents issued in 2009 and 2011 much before the plaintiff herein Alan Amron moved for his own competing patent. Plaintiff Amron improperly failed to cite to LIVE-Fi®'s first two published and issued patents with willful blindness and in bad faith. This fact could prevent enforcement of Amron's 2015 patent or otherwise cause invalidation of the patent by the USPTO that plaintiff is seeking to enforce herein.

In addition, LIVE-Fi® patents are also being used without permission by defendants MLB and MLB Advanced Media since 2011.

---

[1] *US and 35+ US States v. Live Nation Entertainment, Inc.*, 24cv3973 (SDNY)(AS)

[2] *US v. Live Nation and Ticketmaster,* 2010 WL 975407, 975408 (January 25, 2010), Amended Judgment entered January 8, 2020, still in full force and effect against the reorganized merged entity defendant Live Nation Entertainment (LNE).

There is no such thing as laches and the issued patents remain enforceable. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017).

Moreover, at all times relevant, defendant MLB was being represented before the United States Patent and Trademark Office (USPTO) by the same practitioners representing LIVE-Fi® and its counsel at Cowan Liebowitz & Latman. Commissioner of Patents Wynn Coggins opened a conflicts of interest,  abandonment and withholding investigation *sua sponte* and violations were found. 37 CFR §§2.10, 2.19, 10.66, 11.108. 11.116.

Defendants MLB, MLBAM and its thirty national baseball teams have signed contracts with defendant Ticketmaster and StubHub that force ticket consumers to release unrestricted use of ticket data to Ticketmaster.

In addition, LIVE-Fi® regrets that it must seek recusal of magistrate Robyn Tarnofsky, a former state court officer who is well aware of LIVE-Fi®'s priority ticketing management patents and that the patents cover claims seeking to be enforced by plaintiff Amron. It is argued that Magistrate serve in any judicial capacity in this lawsuit because she was serving as the senior staff attorney at the NY Legal Assistance Group, a NYS agency serving as the *pro se* help unit for the SDNY at 40 Foley Square, during the time that the SDNY improperly refused to grant LIVE-Fi® patent discovery, infringement and inducing infringement hearings against defendants Live Nation and Cowan Liebowitz & Latman in violation of the Fourteenth Amendment. LIVE-Fi sought the assistance of the NYLAG and signed seven retainer agreements with NYS. This matter is on mandamus petition to the US Supreme Court. Docket #24-7441.

Ms. Tarnofsky told LIVE-Fi®'s California counsel that the court would not grant an infringement or an inducing infringement hearings against defendant Live Nation or the Cowan firm and she would not assist LIVE-Fi®'s counsel in pursuing constitutional rights to get infringement hearings or damages on any claim for which an issued patent is a condition precedent.  As it turns out the State of New York harbored conflicts of interest caused several officers who were the Cowan and Live Nation's defense attorneys at Hinshaw & Culbertson, dually serving as staff counsel to the First Dept. without disclosing conflicts of interest.

**One week ago, on September 5, 2025, the Northern District of NY Chief Judge, Hon. Brenda Sannes in 24cv211, issued an injunction against NYS court officers to produce the complete files including those found corrupted *ex parte* by attorneys for Live Nation and the Cowan firm at Hinshaw & Culbertson.  A First Dept. order was entered April 21, 2016 ordering permanent concealment of all state files including those corrupted by defendants. Those documents prove forgery crimes not protected by immunity because Weissbrod Gurvey is not admitted in NYS and warrant disbarment.  *US v. Reich*, 479 F. 3d 179 (2d Cir. 2007)**

The USPTO Commissioner of Patents Wynn Coggins *sua sponte* opened an investigation over seven years against the Cowan Liebowitz & Latman practitioners and found conflict of interest and abandonment violations. Results were required to be served on LIVE-Fi and its counsel under the Administrative Procedures Act, 5 USC 500-596 (APA) The results were never served nor were they ordered in patent discovery by the SDNY after a mandate by the 2d Circuit in 2012. 462 Fed. Appx. 26.

Both defendant Live Nation and the Cowan practitioner hired Hinshaw & Culbertson and Supple as defense attorneys before the SDNY in 2011 when that firm could never accept defense of the Cowan lawyers (NY's Judiciary Law Part 1240.6d). Supple was identified in a First Dept. order as the individual manufacturing and inserting forged and unserved fraudulent documents into "ordered concealed" state files that were circulated *ex parte* to this Court to deprive LIVE-Fi® of patent discovery and infringement hearings. The ex parte proffers were never ordered served on LIVE-Fi® or its counsel in violation of ABA Rule 2.9 on *Ex parte Communications*. The acts caused further conflicts with NYS officers of the courts, one of whom was Ms. Tarnofsky.

In the parallel antitrust and divestiture lawsuit currently pending before this Court against Live Nation and Ticketmaster, 24cv3973, defendant Live Nation Entertainment, the merged entity is being defended by Cravath Swain and Moore where Ms. Tarnofsky's husband Antony Ryan, is a partner.

**WHEREFORE,**

(1)    The bad faith acts of the plaintiff Alan Amron prove willful blindness of published LIVE-Fi® patents and pending patents that were delayed for enforcement based on the Commissioner's investigation.

(2) The NDNY order entered September 5, 2025 granting injunction against NYS court officers is proof positive that SDNY defendants Live Nation Entertainment (LNE) and Cowan Liebowitz & Latman had their common defense attorney Richard Supple misuse his concealed state post and state authority, enter forged and unserved documents into ordered concealed NYS files <u>without jurisdiction</u> over LIVE-

Fi®'s California counsel, and solicit illegal acts by other NYS court officers to interfere with federal patent proceedings before the SDNY, the United States Patent and Trademark Office (USPTO), the US Court of Appeals for the Federal Circuit and the CACD.

(3) The fraudulent *ex parte* letters of Office of Court Administration (OCA) staff attorney Shawn Kerby written to the Federal Circuit since 2017 that were first discovered in 2025 and are appended hereto, are proof positive of continuing violations of LIVE-Fi®'s patent interests in this district in violation of the Fourteenth Amendment.

(4) Defendants MLB, MLBAM are headquartered in this district and its thirty national baseball teams including the new Yankee Stadium and Citifield are using the same LNE, Ticketmaster and StubHub systems under supervision of MLB to conduct non-ticketing businesses and generate concession revenues and other benefits for ticketholders.

(5) LIVE-Fi®'s priority ticketing management patents are being used without permission by venture partners of LNE and in violation of the 2010 DCD mandates of merger and 2020 Amended Judgment.  Defendant LNE and Ticketmaster's illegal tying agreement before this court in the antitrust and divestiture lawsuit, 24cv3973, prove illegal tying acts and that defendants MLB and MLBAM are engaging in anticompetitive acts against LIVE-Fi® by contract with LNE defendants.

(6) A motion to enforce the DCD mandates before the district court in Washington DC was separately filed requiring multi-district litigation.

6

(7) This court must order intervention to prevent inconsistent judgments and ensure that LIVE-Fi® and its counsel's constitutional rights are protected.


Dated:  September 12, 2025
Princeton NJ


AMY R. WEISSBROD GURVEY
California Counsel
LIVE-Fi® Technology Holdings, LLC



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

—————————————————————————X

| | |
|---|---|
| Alan Amron, echangingbarcode, LLC,<br>Plaintiffs,<br>v. | Case No. 24-CV-2930 (PAE)<br><br>**DECLARATION AND**<br>**MEMORANDUM OF**<br>**LAW IN SUPPORT OF**<br>**INTERVENTION**<br>**FRPC §24(a)(b)**<br><br>ORAL ARGUMENT<br>REQUESTED |

MLB, MLB ADVANCED MEDIA (MLBAM),
Live Nation Entertainment (LNE),   StubHub,
And 30 national baseball teams and event stadiums
(LNE and STUBHUB noticed on the docket as
Voluntarily terminated by the Plaintiff Amron),
and Does I-X, Defendants.

—————————————————————————X

In support of LIVE-Fi® Technology Holdings' motion for an evidentiary hearing before this Court on September 23, 2025 to intervene in this lawsuit, California counsel Amy Weissbrod Gurvey

8

granted *pro hac vice* status from California in good standing by this
Court, declares to the truth of the following statements:

1.      Proposed Intervenor LIVE-Fi® Technology Holdings is a US-
based technology company that invented, owns and controls standard
essential US patents, patents pending and US-registered copyrights for
direct-to-user privacy-first data transmissions, hybrid encryption,
routing logic, transmission matrices for live event and virtual event
content distribution, user interactions and AI analytics.  Issued patents
and copyrights include US patent Nos. 11403566, D547910S, 7603321;
TXu001265644. Most of the independent and dependent patent claims
and registered copyrights disclose non-ticketing operations and
software platforms that enable other benefits for producers, artists,
sports teams and venues.

2.      The patents do disclose apparatuses and methods for
electronic screen ticketing interfaces and multifunctional bar codes. Yet,
subsequent patents sought to be enforced by the plaintiff Alan Amron
herein, were issued with Amron failing to cite to LIVE-Fi®'s issued
patents to the USPTO at the time he filed patent applications. This
could cause invalidation or prohibition of enforcement of the Amron
patent.

3.      LIVE-Fi®'s priority patents and copyrights include
independent claims and platforms disclosing the priority apparatuses
and systems for end-to-end management of live events, privacy-first
authenticated content distribution, resale and exchange of tickets,
multifunctional barcode systems, mobile ticket displays, and AI
analysis. These are the standard essential platforms that enable most of
the non-ticketing businesses to which the DC District Court referred in
2010 when precluding defendants Live Nation and Ticketmaster from
withholding ticket data from entities and individuals seeking to conduct
non-ticketing businesses.

4.    The 2010 Competitive Impact Statement signed by Live
Nation and Ticketmaster as conditions of merger on January 25, 2010
provided that "***LNE defendants are precluded from withholding
ticketing data from entities seeking to conduct <u>non-ticketing
businesses</u> at the merged entity's dominant share of owned,
operated and serviced event venues***". This provision was
contumaciously defied by LNE defendants as soon as it was "so ordered"
and then by defendants MLB and MLBAM as derivative antitrust
venture partners. Defendants MLB and MLBAM have been excluding
LIVE-Fi® technology from its defendant 30 national baseball teams and
stadiums based on extended venue contracts with defendant
Ticketmaster that seeks unconditional releases in exchange for the
consumer's right to purchase tickets on its website.

5.    It is alleged that defendants MLB and MLBAM and the
plaintiff Amron are making, using selling, offering for sale, and
importing products and services that practice LIVE-Fi®'s claimed
inventions without authorization.

6.    LIVE-Fi® properly moves pursuant to FRCP Rule 24(a)(b).
*Bridgeport v Delmonte*,  602 F. 3d 469 (473 (2d Cir. 2010) to be granted
the right to intervene.

7.    There are three issued LIVE-Fi® patents and copyrights and
13 pending patents in LIVE-Fi®'s portfolio with eleven confidential
patent applications pending before the United States Patent and
Trademark Office (USPTO). [3] The inventions are the priority  privacy-
first alternative to defendant Ticketmaster's opaque data flows and
coerced release of consumer data mandated when the consumer logs in
the Ticketmaster website to purchase tickets for an event. The patents

---

[3] Gurvey US Patent Nos. 11403566, D647910S and 7603321

also serve as a revenue unlock for artists and venues via ethical advertising and ticket resale systems. In a nutshell, LIVE-Fi® methods restore transparency and revenue equity in live entertainment and sports and maximum revenues generated from every live event. By enforcing its rights in this lawsuit, LIVE-Fi® is not just protecting innovation but empowering artists and venues to reclaim value from data they create and generate.

8.    One preferred embodiment discloses the apparatuses, systems and designs for privacy-first direct-to-user event interaction content enablement, venue readers, multifunctional bar codes, confidential royalty accounting, secured data transmissions and analysis methods and designs for new venue architecture.

9.    The 11403566 third US patent that issued on August 2, 2022 is a continuation of the October 13, 2009 321 patent. It was required to be granted a hearing before the SDNY. *Anza Technology v. Mushkin*, 934 F. 3d 1349 (Fed Cir. 2019); *Metzler investments Gmbh v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir. 2020); *Grant Williams v. Citicorp*., 659 F. 3d 208 (2011). That patent issued an unprecedented 17 years after the relevant patent application was filed in 2005 (11253912).  Per the Federal Circuit, the deadline is three years from the date of filing, making the 566 <u>late by fourteen years.</u> *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010). The 566 patent is considered a standard essential patent for ticketing management and by law, all claims should have issued in 2008.  The SDNY never granted an infringement hearing against the named defendants Live Nation, Phish or Cowan Liebowitz & Latman.

10.    However, defendant MLB and MLBAM were not parties in the previous SDNY lawsuit and with no infringement hearings ever allowed, no collateral estoppel or claim preclusion can be entered. *Lucky*

*Brand Dungarees v. Marcel Fashions*, 140 S. Ct. 1589, 590 US ___ (2020)[4]

11.    A *sua sponte* investigation was opened by the US Commissioner of Patents Wynn Coggins to investigate the cause for prejudicial delay.  It was determined that defendants MLB, MLB Advanced Media and Live Nation Entertainments common intellectual property attorneys at Cowan Liebowitz & Latman of NYC, also representing LIVE-Fi® counsel Weissbrod Gurvey before the USPTO without disclosing conflicts of interest, engaged in collusive conflict of interest violations and *ex parte* obstruction of justice with NYS officers of the courts and J. Richard Supple.  Supple was dually serving as a NYS staff attorney at the First Dept. An order of the First Dept. entered April 21, 2016 identified Supple as the manufacturer and forger of "ordered concealed" and unserved state documents that were circulated to the NYS court officers in the First Dept., to the NYS Office of Court Administration, to the SDNY, to the Federal Circuit and to USPTO officers. The legal result was the unprecedented delay in issuance and enforcement rights in and to LIVE-Fi® patents.

12.    The Commissioner found that conflicts of interest violations admitted to by the Cowan firm in withheld files were determined to be per se patent ethics violations in breach of federal mandates. 37 CFR 2.10, 2.19, 10.66, 11.108, 11.116. The Cowan practitioner violations also included abandonment of patent applications and withholding of USPTO files and caused forfeiture of valuable priority dates. The 2d Circuit ordered production of these files in 2012 (462 Fed Appx. 26) and reversed an ex parte stay of patent discovery secured by Live Nation and Cowan's defense attorneys, Hinshaw & Culbertson, Supple and Steven Schortgen of Baker Botts. The Cowan and Hinshaw violations

---

[4] LIVE-Fi®'s  first SDNY infringement complaint docketed and date stamped on April 22, 2010  was deleted ex parte by a clerk in 2013, Dionisio Figueroa, who upon belief was convicted of taking bribes in 2023 by the US Dept. of Justice.

induced the Commissioner of Patents to take fourteen (14) of LIVE-Fi®'s applications out of the queue *sua sponte* for seven years to complete the investigation in violation of the Administrative Procedures Act. [5] 5 USC §§500-596 (APA)

13.    The APA expressly required the USPTO and all federal tribunals to order service on LIVE-Fi® of the results of the Commissioner's investigation. But LIVE-Fi® was never served and all FOIA requests filed at the USPTO and the State of NY were ignored since 2017.

14.    In 2025, it was discovered that OCA attorneys Shawn Kerby who got the forged documents circulated from Supple, began writing *ex parte* letters to the Federal Circuit in 2018 not to hear LIVE-Fi®'s "arising under" appeals to orders of the SDNY denying hearings on infringement, inducing infringement and willful infringement. The documents never ordered served on LIVE-Fi® were fraudulent and defamatory saying that LIVE-Fi®'s counsel was disbarred in NYS. **LIVE-Fi®'s counsel was never disbarred and never sanctioned in any order by the NY Court of Appeals, mandating injunctive relief for state officers' continuing violations of constitution rights. <u>Injunction was granted by the NDNY in 24cv211 on September 5, 2025 to compel production of the complete state files.</u>** There is no immunity for malicious harassment without jurisdiction by NYS state court officers. *Forrester v. White*, 484 US 219 (1989); *Stump v. Sparkman*, 435 US 349 (1978)

15.    By 2017, the Hinshaw lawyers and Supple were required to withdraw from the Cowan firm's representation  before the SDNY or be disqualified. They never withdrew and disqualification was never ordered. This matter is before the US Supreme Court with orders to

---

[5] 37 CFR 2.10,. 2.19, 01.66, 11.108, 11.116.

reverse the Federal Circuit's orders transferring three arising under patent appeals to orders of the SDNY denying infringement hearings against defendants Live Nation and Cowan Liebowitz. The 2d Circuit that has no jurisdiction to hear arising under patent appeals. Supremacy Clause, Art. VI, Cl. 2. See US Supreme Court Docket #24-7441.

16. However, the pending Supreme Court appeal has nothing to do with LIVE-Fi®'s right to enforce its patents against defendants MLB and MLB Advanced Media and seek recourse against the plaintiff Amron herein for bad faith and willful blindness before the USPTO.

17. There can be no prejudice to any parties if LIVE-Fi®'s motion seeking intervention is granted because discovery has hardly begun.

18. Weissbrod Gurvey's discovery of the *ex parte* defamatory documents circulated since 2018 by NYS OCA officers who were consorts with defendant Live Nation's defense lawyers did not occur until 2025, delaying discovery through no fault of LIVE-Fi®. *Detention Watch Network v. US ICE*, 2016 WL 11793613.

19. The NDNY order entered an injunction on September 5, 2025 ordering NYS court officers to produce the complete state files corruption with forged and fraudulent documents by defendant Live Nation' and The Cowan firm's defense attorney. There is no dispute that Supple misused his concealed state post and state authority, to enter forged and unserved documents into ordered concealed NYS files without jurisdiction over LIVE-Fi®'s California counsel, and solicit illegal acts by other NYS court officers to interfere with federal patent proceedings before the SDNY, the United States Patent and Trademark Office (USPTO), the US Court of Appeals for the Federal Circuit and the CACD.

20.    The stated preclusion entered in 2010 by the DDC in the
competitive impact statement proscribing the withholding of ticketing
data from non-ticketing businesses *was ordered to prevent the merged
entity from leveraging ticketing dominance and to foreclose competitors
from adjacent markets such as analytics, market access, direct to fan
marketing, and fan engagement platforms*.

21.    Because defendant Ticketmaster's systems are opaque and
unsecured, a confidential data transmission and hybrid encrypted
system also performing AI transmission matrices remains sorely
coveted by competitors. It cannot be excluded by defendants MLB and
MLBAM as derivative venture partners or licensees of defendant LNE.

22.    In the parallel antitrust and divestiture lawsuit, the court
found that defendants' anticompetitive acts included a plethora of acts
in addition to the proscription entered by the DC District Court. This is
proven by the EDNY criminal proceedings against defendant
Ticketmaster filed in 2021 and the other anticompetitive acts of forgery
and fraud by defendant Live Nation Entertainment's attorneys in
ordered concealed NYS court files. *US v. Ticketmaster*, 21-cr-22, 24
(EDNY).  Documents were found in these files manufactured in 2011
that affixed the signature of a 2002 former AGC chief counsel, Paul
Curran, who died of cancer in 2007.

## MEMORANDUM OF LAW

23.    A third party may see intervention as of right under Rule
24(a)(2) if:

(i)    It has a legally protectable interest such as market access and relevant US patents which LIVE-Fi® does own and control;

(ii)    The outcome of the lawsuit may impair those interest(s) such as LIVE-Fi®'s continuing right to get injunctive relief, procure discovery of withheld and confidential USPTO files, preclusion orders and injunctive relief, , and to recover strict liability infringement damages.

(iii)    Defendants MLB and MLBAM may possess trade secrets related to ticketing and data architecture, user analytics and venue operations disclosed to defendant and LIVE-Fi®'s common USPTO lawyers, that were found to engaged in breach of fiduciary duty, attorney client privilege. These trade secrets were disclosed to former SDNY defendant Cowan Liebowitz & Latman under confidentiality obligations and were improperly shared with defendants MLB and MLBAM.

(iv)    The outcome could further impair LIVE-Fi®'s already-delayed recovery of strict liability patent infringement damages and copyright infringement damages based on existing patents.

(v)    In addition, the outcome could impede LIVE-Fi®'s recovery of damages and treble damages based on the plaintiff Amron's bad faith and willful blindness and defendant MLB and MLBAM's USPTO attorneys conflict of interest[6] with LIVE-Fi§ found by the US Commissioner of Patents. (*Mindy's Cosmetics v. Dakar*, 611 F. 3d 590 (9th Cir. 2010));

---

[6] This claims supports a claim for unjust enrichment and potentially a constructive trust over divested revenues.

(vi)    The plaintiff herein cannot adequately represent all of LIVE-Fi®'s patent interests when LIVE-Fi ® is the priority patentee holding more comprehensive patents against the same defendants. *Detention Watch Network v. US ICE*, 2016 WL 11793613 (SDNY); *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 US 519 (1947)

24.    LIVE-Fi®'s harm is ongoing and stems from:

(i)    Defendants MLB and MLBAM both impair access to confidential ticketing data in violation of the 2010 DCD final antitrust judgment and 2020 amended judgment.

(ii)    Upon belief defendants MLB and MLBAM have signed Ticketmaster's extended Terms of Use agreements wherein Ticketmaster is given the exclusive right to user ticket data of MLB and MLBAM customers.

(iii)    Defendants MLB and MLBAM continue willful infringement of LIVE-Fi® patents that remain in term further demonstrating a direct substantial and legally protectable interest in the subject matter of this litigation;

(iv)    Forgery crimes, *ex parte* obstruction of justice and collusion by defendant Live Nation and the Cowan firm's lawyer Supple, who was doubling as a NY officer of the courts and perpetrated ex parte crimes on behalf of these defendants in including before the United States Patent and Trademark Office, the US Commissioner of Patents, the Federal Circuit and the state and federal courts in New York and while ordered by injunction on September 5, 2025 by the NDNY, to

date the documents remained ordered concealed by the
State. [7]

(v)     The disposition of this action will undoubtedly further delay
        and prejudice LIVE-Fi®'s continuing ability to protect its
        interests with respect to market access to venue clients,
        patent and copyright enforcement and to get injunctive relief
        against defendants for perpetrating crimes and unprivileged
        defamation to prevent infringement hearings.

(vi)    In addition, LIVE-Fi®'s unpublished patent applications are
        confidential properly interests. They are entitled to
        protective orders against discovery production from this
        court. *Radio Music License v. BMI*, 347 FRD 262 (SDNY
        2024)

(vii)   Moreover, the documents generated from defendant Cowan's
        participation in *ex parte* conflicts of interest before the
        USPTO, obstruction of justice and having its lawyers
        circulate of forged documents to tribunals, were required to
        be served on LIVE-Fi® pursuant to the Administrative
        Procedure Act (APA), 5 USC §§500-596, 701-706. That the
        anticompetitive conduct involved violations of federal
        statutes is a separate ground for granting intervention as a
        matter of right under mandates of the US Supreme Court.
        *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331
        US 519 (1947).

---

[7] The Federal Circuit fraud crimes were perpetrated without NY attorney
jurisdiction malicious abusing process against LIVE-Fi®'s counsel Amy
Weissbrod Gurvey who is only admitted in California. As such the fraud crimes
are not protected by immunity.

(viii)  NYS's Office of Court Administration attorney Shawn Kerby has been circulating ex parte fraudulent and defamatory documents to the Federal Circuit since 2018 concerning defendant LIVE-Fi®'s counsel. The documents were discovered in 2025 and were unlawfully intended to interfere with the patent appeals process without jurisdiction over Weissbrod Gurvey in the capacity of a NY attorney and must be assessed for sanctions.

25.    In a summation, there can be no dispute: (i) that ticketing and advertising revenues derived from LIVE-Fi® patented methods are being precluded by defendants Live Nation and Ticketmaster and hence by licensee defendants MLB and MLB Advanced Media; (ii) performing artists and third party innovators like LIVE-Fi® are excluded from revenue participation despite enabling the underlying value and profits; (iii) this also supports a claim for unjust enrichment and potentially a constructive trust over diverted revenues against the merged entity defendants.

26.    Because defendants are using ticket data to perform functions covered by LIVE-Fi® delayed patents (e.g. resale, multifunctional bar code authentication, targeted advertising and AI analysis) and require access to ticket purchasers' data, defendant LIVE-FI ® may also assert breach of confidentiality if ticket data is not adequately protected by defendant Ticketholder's opaque system against defendants MLB and MLBAM. This violates both LIVE-Fi®'s intellectual property and privacy engineering principals.

27.    In  summation, LIVE-Fi®'s intervention is necessary to protect legally cognizable interests, including: (i) preservation of patent rights under 35 USC §271; (ii) (iii) preservation of copyrights under Title 17; (iv) the right to protective orders to prevent production of confidential patent data and patent applications delayed by defendant

MLB and MLBAM's misconduct before the USPTO that are still
pending; and (v) the right to preserve evidence relevant to *ex parte*
crimes before court officers by defendant Live Nation and the Cowan
practitioners' attorneys.

28.    The US Supreme Court has held that intervention is
appropriate where the applicant's interests may be impaired but are not
adequately represented. See *Trbovich v. United Mine Workers*, 404 U.S.
528 (1972); *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386
U.S. 129 (1967).

29.    Documents submitted *ex parte* by NYS officers of the courts
who were the Cowan defendants defense attorneys before this court
prove acts of unlawful influence, constitutional indifference, improper
*ex parte* communications, and retaliatory exclusion from federally
regulated platforms and patent appeals —all of which intersect with the
monopolistic conduct alleged in the parallel antitrust and divestiture
action pending before this Court.

**WHEREFORE**, Prospective Intervenor LIVE-Fi® respectfully
seeks that this Court grant its Motion to Intervene in all respects based
on the following statutes:

**Intervention as of right:  Rule 24(a)**

(1)LIVE-Fi® has a direct and substantial interest in the subject
matter of this litigation including (a) enforcement of its patent
rights against all name parties; (b) protection of its trade
secrets before the USPTO and proprietary data; and (c)
prevention of further unauthorized use of its proprietary
technology.

(2) LIVE-Fi®'s interest cannot be adequately represented by any of the existing parties and disposition of this case may impair or impede LIVE-Fi®'s ability to protect its rights.

**Permission Intervention under Rule 24(b)**

Also proper based on:

(1) LIVE-Fi®'s claims share common questions of law and fact with the main action including: (a) use and dissemination of ticketing data; (b) the scope and application of LIVE-Fi's patented technologies; and (c ) the contractual and regulatory obligations stemming from the Live Nation-Ticketmaster merger.

(2) Intervention will promote judicial economy and avoid duplicative litigation.

(3) There can be no prejudice to existing parties because discovery has hardly begun.

**IN SUM,**

LIVE-Fi® respectfully requests that this Court

(a) Grant LIVE-Fi® an order to intervene as of right in this action;

(b) Permit LIVE-Fi® the right to file a third party complaint in intervention;

(c) Grant such other and further relief as the Court deems just and proper.

Dated;  Princeton, NJ
September 13, 2025

Respectfully submitted,
AMY WEISSBROD GURVEY

California Counsel

The Court is in receipt of this motion to intervene.
Any opposition from the parties is due September
29, 2025.  No reply is invited at this time.

The request for oral argument is denied.  The Court
will resolve this motion on the papers.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Date: September 18, 2025
New York, New York

2